IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–01908–EWN–KMT


AIG ANNUITY INSURANCE
COMPANY,

      Plaintiff,

v.

LAW OFFICES OF THEODORE COATES, P.C.,
DONALD J. EGAN, M.D.,
KRISTI S. BENNETT,
MARC E. BENNETT,  and
HARTFORD INSURANCE GROUP,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an interpleader insurance action.  Plaintiff AIG Annuity Insurance Company

seeks to interplead the proceeds of an annuity contract for proper distribution amongst the above-

captioned defendants.  This matter comes before the court on "Defendant Law Offices of

Theodore Coates, P.C.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)," filed December 4,

2007; "Defendant Donald J. Egan's Motion to Strike Defendant Law Offices of Theodore

Coates, P.C.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)," filed December 6, 2007;

"Defendant Kristi Bennett's Motion to Strike Defendant Law Offices of Theodore Coates, P.C.'s

Motion to Dismiss Under Fed. R. Civ. P. 12(b)," filed December 18, 2007; "Defendant Kristi

Bennett's Motion to Strike Def. Law Offices of Theodore Coates, P.C.'s Response to Kristi Bennett's Motion to Strike," filed January 14, 2008; and "Plaintiff AIG Annuity Company's Motion for Discharge in Interpleader," filed February 11, 2008. Jurisdiction is purportedly proper under the federal interpleader statute, 28 U.S.C. § 1335.

## FACTS

### 1. *Factual Background*

#### a. *Motion to Dismiss*

As relevant to Defendant Law Offices of Theodore Coates, P.C.'s ("Coates") motion to dismiss, the following facts are taken from Plaintiff's complaint and assumed true for the purposes of this motion. (*See* Compl. for Interpleader and Declaratory Relief [filed Sep. 10, 2007] [hereinafter "Compl."].)

In 1986, Ryan Bennett, a minor, by and through his parents, Defendants Marc E. Bennett and Kristi S. Bennett, entered into a confidential settlement agreement with insureds of Defendant Hartford Insurance Group ("Hartford") in connection with the resolution of a personal injury claim. (*Id.* ¶ 12.) Pursuant to this agreement, Ryan Bennett was to receive $8,000.00 per month for thirty years guaranteed, and then for the rest of his life, with the monthly payments increasing at a rate of five percent per year compounded. (*Id.* ¶ 13.) Accordingly, the final guaranteed payment is due in 2016. (*Id.*)

To fund its obligation under the settlement agreement, Defendant Hartford purchased an annuity contract from Western National Life Insurance Company ("Western"), Plaintiff's predecessor, whereby Western became obligated to pay the periodic payments contemplated in

the settlement agreement.  (*Id.* ¶ 14.)  According to its terms, Defendant Hartford is the owner of the annuity and Plaintiff is its issuer.  (*See id.* ¶ 16.)

On November 2, 2001, Ryan Bennett died.  (*Id.* ¶ 17.)  Under the terms of the settlement agreement, Ryan Bennett's guaranteed periodic payments became payable to his legal representative, devisees, heirs, or estate.  (*Id.*)  Following probate proceedings, Plaintiff faced competing claims to the periodic payments.  (*See id.* ¶ 24.)  First, on December 8, 2006, Defendant Donald J. Egan, M.D., demanded that all future periodic payments be directed to him pursuant to the terms of a security agreement attending a defaulted promissory note Defendant Kristi Bennett had executed in his favor.  (*Id.* ¶ 20.)  Second, on May 14, 2007, Defendant Kristi Bennett sent Plaintiff a death claim form indicating that the "primary beneficiary" of the periodic payments should be her estate.  (*Id.* ¶ 22.)  Plaintiff interpreted this form as claiming Defendant Kristi Bennett was entitled to the entirety of the periodic payments.  (*Id.*)  Third, on June 20, 2007, Defendant Coates sent Plaintiff a "Claim of Attorney Lien" asserted upon all proceeds of the annuity premised upon his representation of Defendant Kristi Bennett in the underlying probate proceedings.  (*See id.* ¶ 23.)

Plaintiff is a disinterested stakeholder claiming no beneficial interest in, or claim to, the periodic payments.  (*Id.* ¶ 26.)

### b. *Motion for Discharge in Interpleader*

As relevant to Plaintiff's motion for discharge in interpleader, the parties have made various representations in pleadings and other filings relevant to their interests in, and competing claims to, the annuity stream.

First, Plaintiff claims that in May 2007 it was directed by the former special administrator of Ryan Bennett's estate to split the periodic payments in equal shares between Defendant Kristi Bennett and Defendant Marc Bennett. (*See* Pl. AIG Annuity Ins. Co.'s Mem. of Law in Supp. of Mot. for Discharge in Interpleader at 4 [filed Feb. 11, 2008] [hereinafter "Pl.'s Discharge Br."]; *see also* Mr. Bennett's Resp. to AIG's Mot. for Discharge [hereinafter "M. Bennett Discharge Resp."], Ex. A at 3 [Probate Court Order] [declaring Defendant Marc Bennett and Defendant Kristi Bennett to each be fifty-percent heirs of Ryan Bennett's estate] [filed Feb. 29, 2008].) Plaintiff represents that it thereupon split the periodic payments between these two defendants, but, in July 2007, began holding the one-half share of the periodic payments to be paid to Defendant Kristi Bennett due to the competing claims described in its complaint. (Pl.'s Discharge Br. at 4–5.) Plaintiff represents that it continues to make the one-half periodic payments to Defendant Marc Bennett as they become due, and has not withheld or suspended any payments to him. (*Id.* at 5.)

In her answer to Plaintiff's complaint, Defendant Kristi Bennett disclaimed any interest in Defendant Marc Bennett's one-half periodic payments, stating that she "admits and asserts that she is only entitled to half of the Periodic Payments, and the Defendant Marc E. Bennett, to the other half." (Def. Kristi S. Bennett's Answer, Countercl., Cross-cl. and Answer to Cross-cl. ¶ 5 [filed Oct. 10, 2007] [hereinafter "K. Bennett Answer"].) Moreover, in various filings, Defendant Kristi Bennett and Defendant Egan both represent they have reached an agreement regarding the former's alleged contractual obligations to the latter, pursuant to which the former will pay off her original and a second promissory note executed in favor of the latter from the

proceeds of the annuity stream once it is restored, according to a schedule upon which these defendants have agreed.  (*See, e.g.*, Preliminary Pretrial Order at 2–3 [filed Feb. 15, 2008].)

Defendant Hartford claims no interest in the periodic payments, claiming only an interest in meeting its legal obligations under the settlement agreement.  (*See* Hartford Ins. Group's Mem. of Law in Supp. of Mot. for Discharge in Interpleader or, in the Alternative, for a Determination Binding upon the Parties as to Whom to Direct Periodic Payments at 1–2 [filed May 27, 2008].)  Specifically, Defendant Hartford states its only interest is in obtaining a binding determination from this court as to whom the periodic payments are owed because, absent such a determination, "[Defendant] Hartford is at risk that if Periodic Payments are made to any one of the parties, [Defendant] Hartford may be liable to the other parties for the Periodic Payments or portions thereof."  (Hartford Ins. Group's Mot. for Discharge in Interpleader or, in the Alternative, for a Determination Binding upon the Parties as to Whom to Direct Periodic Payments at 2 [filed May 27, 2008].)

Defendant Marc Bennett argues that there is no legitimate claim upon his one-half share of the periodic payments.  (*See generally* M. Bennett's Discharge Resp.)  As he correctly notes, neither Defendant Kristi Bennett nor Defendant Egan claim any interest in his one-half share of the annuity.  (*See id.* at 3; *see also* K. Bennett Answer ¶ 5; Answer to Cross-cl. ¶ 3 [filed Sep. 13. 2007] [hereinafter "Egan Answer"] [Defendant Egan representing he asserts no interest in Defendant Marc Bennett's one-half share of the periodic payments].)  Moreover, Defendant Marc Bennett asserts Defendant Coates's claim with respect to the former's portion of the annuity stream is groundless and frivolous.  (*See* M. Bennett's Discharge Resp. at 3–4; Marc E.

Bennett's Answer to Compl. for Interpleader and Declaratory Relief ¶ 28 [filed Dec. 4, 2007] [hereinafter "M. Bennett Answer"].)

Defendant Coates has not yet filed a responsive pleading to Plaintiff's complaint, instead moving to dismiss this complaint. (*See* Def. Law Offices of Theodore Coates, P.C.'s Mot. to Dismiss Under Fed. R. Civ. P. 12(b) [filed Dec. 4, 2007] [hereinafter "Coates's Dismiss Br."].) Nonetheless, liberally construed, Defendant Coates's various filings in this case assert an interest in the entire annuity stream premised upon the theory that this stream represents the "judgment" of the probate court proceeding, and he has a lien upon this "judgment" arising from Defendant Kristi Bennett's failure to pay her legal fees for work he completed in this proceeding. (*See generally id.*) Defendant Coates also appears to claim his purported attorney's lien is superior to any competing claim to the annuity stream. (*See generally id.*)

### 2.  *Procedural History*

On November 7, 2007, Plaintiff filed an interpleader complaint in this court, requesting a declaration of the respective rights of Defendants Kristi Bennett, Marc Bennett, Egan, and Coates to the periodic payments. (Compl. at 8.) Plaintiff unconditionally offered to deposit any disputed payments into this court's registry, or to post a bond in any amount this court deemed appropriate. (*Id.* ¶ 31.) On various dates, all above-named defendants, except Defendant Coates, answered Plaintiff's complaint, asserting various cross and counterclaims now irrelevant to the instant motions. (*See* K. Bennett Answer; Egan Answer; M. Bennett Answer; Def. Hartford Ins. Group's Answer, Affirmative Defenses [filed Dec. 18, 2007].)

On December 4, 2007, Defendant Coates moved to dismiss Plaintiff's complaint on multiple largely incoherent grounds. (*See* Coates's Dismiss Br.) On December 6, 2007, Defendant Egan moved under Federal Rule of Civil Procedure 12(f) to strike Defendant Coates's motion to dismiss on the grounds that this motion constituted "seventeen pages of rambling and unsubstantiated accusations." (Def. Donald Egan's Mot. to Strike Def. Law Offices of Theodore Coates, P.C.'s Mot. to Dismiss Under Fed. R. Civ. P. 12(b) [filed Dec. 6, 2007] [hereinafter "Egan's Strike Br."].) On December 18, 2007, Defendant Kristi Bennett moved to strike Defendant Coates's motion to dismiss on the same grounds. (Def. Kristi Bennett's Mot. to Strike Def. Law Offices of Theodore Coates, P.C.'s Mot. to Dismiss Under Fed. R. Civ. P. 12(b) [filed Dec. 18, 2007] [hereinafter "K. Bennett's Strike Br."].) On December 26, 2007, and January 7, 2008, respectively, Defendant Coates responded to each of these motions to strike. (Def. Law Offices of Theodore Coates, P.C.'s Rule 7(b) Resp. to Def. Donald J. Egan's Fed. R. Civ. P. 12(f) Mot. to Strike [filed Dec. 26, 2007] [hereinafter "Coates's Egan Strike Resp."]; Def. Law Offices of Theodore Coates, P.C.'s Rule 7(b) Resp. to Def. Kristi S. Bennett's Dec. 18, 2007 Fed. R. Civ. P. 12(f) Mot. to Strike [filed Jan. 7, 2008] [hereinafter "Coates's K. Bennett Strike Resp."].) On December 27, 2007, and January 14, 2008, respectively, Defendant Egan and Defendant Kristi Bennett replied. (Def. Donald J. Egan's Reply in Supp. of Mot. to Strike Def. Law Offices of Theodore Coates, P.C.'s Mot. to Dismiss Under Fed. R. Civ. P. 12(b) [filed Dec. 12, 2007]; Def. Kristi Bennett's Reply in Supp. of Mot. to Strike Def. Law Offices of Theodore Coates, P.C.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b) [filed Jan. 14, 2007].) On January 14, 2008, Defendant Kristi Bennett separately moved to strike Defendant Coates's

response to her motion to strike. (Def. Kristi Bennett's Mot. to Strike Def. Law Offices of Theodore Coates, P.C.'s Resp. to Kristi Bennett's Motion to Strike [filed Jan. 14, 2008].) Defendant Coates never responded.

On December 21, 2007, Plaintiff responded to Defendant Coates's December 4, 2007, motion to dismiss on the only substantive grounds identifiable in this motion, and also incorporated by reference Defendants Egan's and Defendant Kristi Bennett's motions to strike on Rule 12(f) grounds. (Pl. AIG Annuity Ins. Co.'s Resp. to Def. Law Offices of Theodore Coates, P.C.'s Mot. to Dismiss Under Fed. R. Civ. P. 12(b) [filed Dec. 21, 2007] [hereinafter "Pl.'s Dismiss Resp."].) On December 31, 2007, Defendant Coates replied. (Def. Law Offices of Theodore Coates, P.C.'s Reply to AIG's Dec. 21, 2007 Resp. to Professional Corp.'s Dec. 4, 2007 Rule 12(b) Mot. to Dismiss [filed Dec. 31, 2007] [hereinafter "Coates's Dismiss Reply"].)

On February 11, 2008, Plaintiff moved for discharge in interpleader, claiming it is a disinterested stakeholder in this action, and requesting attorney's fees. (Pl. AIG Annuity Ins. Co.'s Mot. for Discharge in Interpleader [filed Feb. 11, 2008] [hereinafter "Pl.'s Discharge Br."].) On February 27, 2007, February 29, 2007, and March 4, 2008, respectively, Defendant Kristi Bennett, Defendant Marc Bennett, and Defendant Coates responded. (Def. Kristi Bennett's Resp. to Pl. AIG Annuity Ins. Co.'s Mot. for Discharge in Interpleader [filed Feb. 27, 2008] [hereinafter "K. Bennett's Discharge Resp."]; Mr. Bennett's Resp. to AIG's Mot. for Discharge [filed Feb. 29, 2008] [hereinafter "M. Bennett's Discharge Resp."]; Def. Law Offices of Theodore Coates, P.C.'s Resp. to the Feb. 11, 2008 Mot. for Discharge in Interpleader Filed by Pl. AIG [filed Mar. 4, 2008] [hereinafter "Coates's Discharge Resp."].) On March 20, 2008,

Plaintiff replied.  (Pl. AIG Annuity Ins. Co.'s Reply Br. in Further Supp. of Mot. for Discharge in Interpleader [filed Mar. 20, 2008] [hereinafter "Pl.'s Discharge Reply"].)  These matters are ripe for review.

## ANALYSIS

### *1. Legal Standard for Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2008).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).  Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff.  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), dismissal of a complaint was appropriate only when it appeared the plaintiff could prove "no set of facts" in support of the claims that would entitle him to relief.  *See, e.g.*, *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994).  In *Bell Atlantic*, the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face."  127 S. Ct. at 1974.  *Bell Atlantic* did not, however, mark a sea change.  As the Court explained in a case decided two weeks after *Bell Atlantic*, "Federal Rule of Civil Procedure 8(a)(2) requires

only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

*Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic*, 127 S. Ct. at 1964); *see Alvarado*, 493 F.3d at 1215 n.2 (stating that *Bell Atlantic* and *Erickson* suggest "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief"); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (stating that courts must take as true "all plausible, non-conclusory, and non-speculative" facts alleged in a plaintiff's complaint).

## 2.    *Evaluation of Claims*

The two substantive motions before the court are Defendant Coates's motion to dismiss and Plaintiff's motion for discharge in interpleader.  (*See* Coates's Dismiss Br; Pl.'s Discharge Br.)  I address each motion in turn.

### a.    *Motion to Dismiss*

Defendant Coates seeks to dismiss Plaintiff's complaint on multiple largely incoherent grounds.  (*See* Coates's Dismiss Br.)  In response, Plaintiff, Defendant Egan, and Defendant Kristi Bennett cumulatively respond on both substantive grounds, and separately move to strike Defendant Coates's motion under Federal Rule of Civil Procedure 12(f).  (*See* Pl.'s Dismiss Resp.; Egan's Strike Br.; K. Bennett's Strike Br.)  I address the motions to strike first, and then assess Defendant Coates's substantive arguments for dismissal.

### i.    *Motions to Strike*

Plaintiff, Defendant Egan, and Defendant Kristi Bennett each move to strike Defendant Coates's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (2008).  Plaintiff and these defendants cumulatively argue that Defendant Coates's motion to dismiss is redundant, immaterial, and impertinent, citing various representations therein.  (*See, e.g.*, Egan's Strike Br. at 1–2; K. Bennett's Strike Br. at 3.)  In response, Defendant Coates argues in part that Rule 12(f) does not apply to motions to dismiss, which he claims are not "pleadings" within the meaning of this rule.  (*See* Coates's K. Bennett Strike Resp. at 1–2; Coates's Egan Strike Resp. at 1–2.)  For the following reasons, I agree with Defendant Coates.

Upon its face, Rule 12(f) pertains only to "pleading[s]," and Rule 7(a) defines the "allowed" pleadings in a civil action to include: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) a reply to an answer, if ordered by the court.  Fed. R. Civ. P. 12(f) (2008); Fed. R. Civ. P. 7(a) (2008).  Defendant Egan and Defendant Kristi Bennett argue without legal support that the term "pleadings" as used in Rule 12(f) is not restricted to the "allowed" pleadings listed in Rule 7(a), and urge that I interpret the term "pleadings" in Rule 12(f) liberally in light of what they allege are Defendant Coates's unreasonably inflammatory statements.  (Egan's Strike Reply at 3; K. Bennett's Strike Reply at 2.)

Although I have located no Tenth Circuit authority on point, this court has previous held that "a motion to strike under Rule 12(f) is properly directed at pleadings, as described in Rule 7(a), not motions." *Williams v. Alpine Banks of Colo.*, No. 05–cv–02475–WDM–MEH, 2006 WL 905333, at *1 (D. Colo. Apr. 7, 2006) (citing *Jones v. Topeka*, 764 F. Supp. 1423, 1425 [D. Kan. 1991]).  Multiple other district courts appear to be in accord.  *See, e.g.*, *Beaulieu v. Ludeman*, — F. Supp. 2d. —, 2008 WL 2498241, at *28 (D. Minn. June 18, 2008) (stating "a motion to dismiss . . . is not a pleading for the purposes of Rule 12[f]," and citing multiple district court cases so holding).  Because Plaintiff, Defendants Egan, and Defendant Kristi Bennett have cited no law to the contrary, and because their argument that the term "pleadings" in Rule 12(f) should encompass motions to dismiss appears contrary to the clearly established weight of authority in both this district and others, I find their invocation of Rule 12(f) improper, and hereby deny their respective motions to strike.  For the same reasons, I also deny Defendant Kristi Bennett's motion to strike Defendant Coates's response to her motion to strike.

### ii.     *Motion to Dismiss on Substantive Grounds*

In his motion to dismiss, Defendant Coates advances multiple arguments of questionable coherence.  (*See* Coates's Dismiss Br.)  Although most of these arguments are opaque and utterly lacking in meaningful context, Defendant Coates appears to broadly argue that: (1) he represented Defendant Kristi Bennett in the underlying probate proceedings from 2003 to 2006, and somehow acquired a lien in the annuity which was the subject of these proceedings, and which he further claims he preserved from being consumed through various taxes; and (2) Plaintiff and the other defendants conspired with each other — and/or probate court judge and/or

the special administrator of Ryan Bennett's estate — to defeat his attorney's lien, and are

continuing to so conspire in the instant action.  (*See id.*)  One paragraph of Defendant Coates's

motion is representative of the broader flavor of his arguments:

> In a very real sense this Federal Court is being defiled, in essence, by the
> seemingly slippery efforts by the opposing counsels in the state court probate case
> . . . and by actions [Defendant Coates] suspects and it has (circumstantial)
> evidence to prove that [Defendant] Egan [sic] agent(s), its [sic] prior attorney in
> particular, who is also attorney for the building management company and owns
> and controls such entity that has keys to [Defendant Coates's] law office
> premises, as [Defendant] Egan's agent, and [sic] surreptitiously obtained access to
> [Defendant Coates's] computer and other records and emails (with [Defendant]
> Kristi Bennett), in a kind of 'reverse Daniel Ellsberg' scenario ([Defendant] Egan
> being, formerly, a practicing psychiatrist at some point).

(*Id.* at 15.)

Defendant Coates's allusion to Defendant Egan being a prior practicing psychiatrist who

allegedly broke into his office — in ostensible "reverse" contrast to the famous scenario

surrounding the break-in of Daniel Ellsberg's psychiatrist's office after release of the Pentagon

Papers — also incorporates Defendant's Coates's belief that Defendant Egan is perpetrating a

fraud upon this court by representing himself to be a doctor when, in fact, he allegedly "has a rap

sheet," "is not the person he purports to be," and has "for years [been] a high interest loan maker

and loan collector and is not licensed anymore as a physician nor as a psychiatrist."  (*Id.* at 13.)

In support of his various "arguments," Defendant Coates proffers almost eighty pages of

attached exhibits including: (1) purported medical licensing and professional disciplinary records

relating to Defendant Egan; (2) emails between himself and the other parties' lawyers restating

and elaborating upon his various conspiracy theories; and (3) various parties' filings in the

probate court proceedings that are allegedly relevant to his attorney's lien. (*See id.*, Exs. 1–3 [Filings].)

In response to Defendant Coates's motion, Plaintiff contends that Defendant Coates's only legally cognizable argument is his passing suggestion that subject matter jurisdiction over Plaintiff's interpleader action may be lacking because Plaintiff has not yet interpled the disputed periodic payments. (*See* Pl.'s Dismiss Resp. at 2–3.) I agree that this argument is the only legally cognizable argument in Defendant Coates's motion, but also note that Defendant Coates also purports to invoke inapposite law addressing the propriety of general diversity jurisdiction where allegedly diverse parties are not actually adverse. (*See* Coates's Dismiss Br. at 6.) In an abundance of caution, I address each issue in turn. At the outset, however, I note Defendant Coates's motion violates this court's local rules requiring that "motions, responses, and replies shall be concise," and warning that "[a] verbose, redundant, ungrammatical, or unintelligible motion, response, or reply may be stricken or returned for revision, and its filing may be grounds for imposing sanctions." *See* D.C.COLO.LCivR 7.1(H) (2008). I reserve the right to strike Defendant Coates's other filings relating to the outstanding dispositive motions in this case, and strongly encourage Defendant Coates to engage separate counsel as he represented he might do if his motion to dismiss were denied. (*See* Coates's Egan Strike Resp. at 8 [stating "[separate counsel] would hopefully be representing [Defendant Coates] if the Rule 12(b) motion is ultimately denied and a general appearance becomes necessary"].) Moreover, I note that I will entertain any appropriate motion to supplement Defendant Coates's briefing on the outstanding dispositive motions should he engage separate counsel, and should this counsel represent that he

or she can succinctly explain the basis of Defendant Coates's claim to have a valid attorney's lien in the judgment of the probate court proceedings.  Finally, I observe that Defendant Coates's arguments purporting to prove that his attorney's lien is valid are inapposite in a motion to dismiss because such arguments implicitly ask me to convert this motion into a motion for summary judgment, which I decline to do in light of the pending dispositive motions that should test the sufficiency of Defendant Coates's claims.

### 1.  *Subject Matter Jurisdiction Under the Federal Interpleader Statute: Deposit of Funds*

The only legally cognizable argument in Defendant Coates's motion to dismiss is his passing suggestion that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction under the federal interpleader statute because Plaintiff has not yet deposited the disputed periodic payments into this court's registry.  (*See* Coates's Dismiss Br. at 7.)  In response, Plaintiff argues that its unconditional offer to deposit such funds, or to post a bond, is sufficient to invoke this court's jurisdiction, and additionally claims it was prevented by this court's local rules from depositing such disputed funds into the registry absent a court order so requiring.  (Pl.'s Dismiss Resp. at 2–3.)  For the following reasons, I find subject matter jurisdiction over Plaintiff's complaint currently lacking, but nonetheless hold that dismissal of this complaint is an improper remedy.

The federal interpleader statute provides for district court jurisdiction over interpleader actions involving disputed insurance proceeds over $500 if:

> (1) Two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . .; and if (2) the plaintiff has

deposited such money or property or has paid . . . the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C. § 1335(a) (2006).

As opposed to rule interpleader under Federal Rule of Civil Procedure 22, statutory interpleader requires the deposit of disputed funds as a condition precedent to a district court's acquisition of subject matter jurisdiction. *See, e.g.*, *Schneider v. Cate*, 405 F. Supp. 2d 1254, 1267 (D. Colo. 2005) (citing *Gannon v. Am. Airlines, Inc.*, 251 F.2d. 476, 481 [10th Cir. 1957]). Although the Tenth Circuit appears to never have addressed when disputed funds must be deposited into a court's registry to trigger or maintain subject matter jurisdiction in a statutory interpleader action, circuit and district courts outside of this circuit have held that a plaintiff's failure to timely deposit disputed funds creates a jurisdictional infirmity that is easily cured. *See, e.g.*, *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 396–97 (S.D.N.Y 2006) ([1] stating that "failure to deposit the stake with the Court's registry alone would not warrant outright dismissal;" [2] asserting it would be error to "dismiss the complaint without affording an opportunity to cure;" and [3] citing multiple district and circuit court cases so holding); *see also Star Ins. Co. v. Cedar Valley Express, L.L.C.*, 273 F. Supp. 2d 38, 42 (D.D.C. 2002) (finding statutory requirements of section 1335 met where plaintiff "requested permission to deposit [disputed funds] with the court registry"). Moreover, other district courts in this circuit allow plaintiffs the opportunity to cure jurisdictional infirmity caused by their failure to interplead

funds rather than dismiss their complaints. *See, e.g.*, *Prudential Ins. Co. of Am. v. Bank of Commerce*, 857 F. Supp. 62, 65 (D. Kan. 1994) ("We conclude that we lack jurisdiction over the instant interpleader action at the present time because the proposed bond is not adequate . . . . Rather than dismiss the action, however, the court will give [plaintiff] the opportunity to post [a compliant bond] or, in the alternative, deposit that sum in the court registry."). Similarly, this court appears to have dismissed a statutory interpleader action only where the plaintiff neither deposited the disputed asset, nor had the legal power to do so. *See Network Solutions, Inc. v. Clue Computing, Inc.*, 946 F. Supp. 858, 860 (D. Colo. 1996) (dismissing a statutory interpleader complaint where the plaintiff could not "deliver [the disputed asset] to the Court"). Finally, as Plaintiff correctly states, this court's local rule pertaining to the deposit of funds provides that "[n]o deposit into an interest-bearing account shall be permitted without court order." D.C.COLO.LCivR 46.1(A)(1) (2008).

Based on such authority, I agree with Defendant Coates that subject matter jurisdiction over Plaintiff's complaint is currently lacking. *See, e.g.*, *Schneider*, 405 F. Supp. 2d at 1267 (stating that deposit of disputed funds is a jurisdictional prerequisite to a statutory interpleader action). Nonetheless, I also find that, rather than dismissing Plaintiff's complaint, the proper remedy is to provide Plaintiff the opportunity to deposit the disputed funds into this court's registry because: (1) Plaintiff has represented its unconditional willingness to do so; and (2) no party disputes Plaintiff's legal control over the disputed periodic payments. (*See* Compl. ¶ 31); *compare Prudential Ins. Co. of Am.*, 857 F. Supp. 62 (permitting plaintiff to cure jurisdictional defect by depositing disputed funds into court registry), *with Network Solutions, Inc.*, 946 F.

-17-

Supp. 858 (dismissing complaint where plaintiff lacked legal power to deposit disputed asset into the court registry). Moreover, I note this holding comports with local rules requiring parties to obtain a court order prior to depositing funds into the court's registry. *See* D.C.COLO.LCivR 46.1(A)(1) (2008). Accordingly, I deny Defendant Coates's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction due to Plaintiff's failure to deposit funds.

### 2. *Subject Matter Jurisdiction Under the Federal Interpleader Statute: Diversity*

Defendant Coates's motion to dismiss also invokes two inapposite cases discussing the propriety of general federal diversity jurisdiction where the true alignment of parties according to their actual interests arguably demonstrates that complete diversity is lacking because the purportedly adverse parties are not actually adverse. (*See* Coates's Dismiss Br. at 6–7 [citing *Employers Ins. of Wasau v. Crown Cork & Seal Co.*, 942 F.3d 862 (3d Cir. 1991); *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941)].) Drawing upon these citations, Defendant Coates apparently asks me to consider his various conspiracy theories pertaining to the true alignment of the other parties as part of my assessment of whether subject matter jurisdiction over Plaintiff's complaint exists. (*See* Coates's Dismiss Br. at 6–16.)

I find that, even assuming Defendant Coates's proffered cases are persuasive by analogy to the propriety of subject matter jurisdiction under the federal interpleader statute, his argument fails *ab initio* because his various conspiracy theories are all directed at showing that all the other parties, including Plaintiff, are aligned against him. (*See id.*) Accordingly, even if I agreed with Defendant Coates's theories regarding the true alignment of the other parties, I would still

not find subject matter jurisdiction over Plaintiff's complaint lacking on this ground alone because section 1335 requires only minimal diversity between two or more adverse claimants to the disputed interpled funds. *See* 28 U.S.C. § 1335(a) (2006). At a minimum, Defendant Coates fails to dispute that his Colorado professional corporation is diverse from Defendant Marc Bennett, who he includes in the constellation of interests arrayed against him, and who he fails to dispute is a citizen of Florida. (*See* Coates's Dismiss Br.; Compl. ¶¶ 2, 5 [stating Defendant Marc Bennett is a citizen of Florida].) Accordingly, I find there is minimal diversity between Defendant Coates and at least one other adverse claimant, and accordingly decline to dismiss Plaintiff's complaint for lack of subject matter jurisdiction under the diversity requirement of the federal interpleader statute.

### b.    *Motion for Discharge in Interpleader*

The second substantive motion before the court is Plaintiff's motion for discharge in interpleader. (*See* Pl.'s Discharge Br.) Plaintiff argues that it has satisfied all the statutory requirements of section 1335, and should be dismissed as a disinterested stakeholder. (*Id.* at 7–8.) Plaintiff additionally seeks its attorney's fees in this action. (*Id.* at 8–10.) In response, Defendant Kristi Bennett and Defendant Marc Bennett raise no objection to Plaintiff's discharge in interpleader. (K. Bennett's Discharge Resp. at 2–3; M. Bennett's Discharge Resp. at 3–4.) However, Defendant Kristi Bennett argues that awarding attorneys fees would be inequitable as it would reduce any future judgment in her favor by the amount of the fees Plaintiff incurred in responding to Defendant Coates's frivolous filings. (K. Bennett's Discharge Resp. at 2–3.) Defendant Marc Bennett urges that I only discharge Plaintiff from this action after ordering all of

Plaintiff's suspended and future periodic payments to Defendant Kristi Bennett deposited into

this court's registry, and all future payments to him to continue unabated. (M. Bennett's

Discharge Resp. at 3–4.) Defendant Coates responds to Plaintiff's motion incoherently, arguing,

*inter alia*, that: (1) this motion represents an untimely attempt to amend Plaintiff's complaint; (2)

the other parties are conspiring to defeat his valid attorney's lien; and (3) the other parties'

litigation conduct satisfies the elements of a civil conspiracy claim. (Coates's Discharge Resp. at

1–15.) I strike Defendant Coates's response as noncompliant with this court's local rules, but

decline to return this response for refiling because, as I explain below, Plaintiff's motion for

discharge is premature. *See* D.C.COLO.LCivR 7.1(H) (2008) (stating that a "verbose,

redundant, ungrammatical, or unintelligible motion" may be stricken). Nonetheless, I note that

any future filings of this ilk, should Defendant Coates disregard my exhortations to engage

separate counsel, may be grounds for sanctions pursuant to this same rule. *See id.*

Title 28, section 2361 of the United States Code governs the relief available to a plaintiff

under the federal interpleader statute. 28 U.S.C. § 2361 (2006). In relevant part, this statute

relates:

> In any civil action of interpleader . . . under section 1335 . . . a district court may
> issue its process for all claimants and enter its order restraining them from
> instituting or prosecuting any proceeding in any State or United States court
> affecting the property, instrument or obligation involved in the interpleader action
> until further order of the court. . . .

> Such district court shall hear and determine the case, and may discharge the
> plaintiff from further liability, make the injunction permanent, and make all
> appropriate orders to enforce its judgment.

*Id.* Although the Tenth Circuit appears to never have addressed the prerequisites for a plaintiff's discharge from a statutory interpleader action, other circuit courts have held that "[b]efore discharging a stakeholder under [section] 2361, the court must first determine whether the requirements of [section 1335] have been met." *Mendez v. Teachers Ins. & Annuity Ass'n and Coll. Ret. Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992). District courts in this circuit have both repeated and applied this rule. *See, e.g.*, *Am. Home Life Ins. Co. v. Barber*, No. 02–4168–SAC, 2003 WL 21289986, at *2 (D. Kan. May 16, 2003) (noting that discharge is appropriate where a plaintiff "is a mere stakeholder and can contribute nothing toward resolution of the issues between the other parties, *its interpleader action is properly filed*, and no genuine issue exists as to its rights and liabilities" [emphasis added]); *Am. Family Mut. Ins. Co. v. Wilkins*, No. 05–1329–MLB, 2008 WL 2622869, at *4 (D. Kan. July 1, 2008) (discharging plaintiff who had "no beneficial interest in the proceeds of the" disputed fund once "the statutory prerequisites for interpleader" were met); *Fed. Ins. Co. v. Adams*, No. 05–cv–00965–MSK–CBS, 2006 WL 2900916, at *1 (D. Colo. Apr. 26, 2006) (ordering plaintiff relieved from further appearance in statutory interpleader action after it had "deposit[ed] . . . the insurance policy proceeds into the Court Registry").

Based on such authority, I find Plaintiff's motion for discharge premature because it has not yet satisfied the jurisdictional prerequisites of the federal interpleader statute as determined above. (*See* Analysis, §2[a][ii][1], *supra*.) For similar reasons, I find Plaintiff's motion for attorney's fees premature because a district court only enjoys discretion to award such fees "out of the deposited fund." *Melton v. White*, 484 F. Supp. 1513, 1514 (W.D. Okla. 1994) (citation

and internal quotation marks omitted). Because there is no deposited fund, there is no source from which I could award Plaintiff's attorney's fees.

Finally, to cure the jurisdictional infirmity described above, I order Plaintiff to deposit into this court's registry all past suspended periodic payments to Defendant Kristi Bennett, and all future periodic payments to both Defendant Kristi Bennett and Defendant Marc Bennett as these payments become due. I also order Plaintiff to post a bond, with such surety as the clerk of this court deems acceptable, in the amount of the periodic payments Plaintiff made to Defendant Marc Bennett between receipt of Defendant Coates's June 20, 2007, letter informing Plaintiff of Defendant Coates's purported attorney's lien upon the entire annuity stream, and the date of the instant order. Although the posting of this bond might expose Plaintiff to double liability should I ultimately determine that Defendant Coates was entitled to the entire annuity stream, Plaintiff's complaint has placed the propriety of its payments to Defendant Marc Bennett after receipt of Defendant Coates's letter in controversy, and "a federal district court seldom has jurisdiction if the stakeholder deposits in the court registry less than the entire sum of money in controversy." *Miller & Miller Auctioneers, Inc. v. G.W. Murphy Indus.*, 472 F.2d 893, 895 (10th Cir. 1973) (finding jurisdiction lacking over statutory interpleader action where the plaintiff failed to deposit the entire sum in controversy, and instead paid a portion of this sum to one of the claimants, even after another claimant had notified the plaintiff of his competing claim to these funds); *cf. Champlin Petroleum Co. v. Ingram*, 560 F.2d 994, 996 (10th Cir. 1977) (finding jurisdiction proper where the plaintiff "deposited all that it had in its possession at the time it was notified of the dispute"). For similar reasons, I deny Defendant Marc Bennett's request that I

order Plaintiff to continue making periodic payments to him unabated because this request improperly asks me to decide the merits of Defendant Marc Bennett's claim *vis–à–vis* Defendant Coates's claim before I have retained jurisdiction. Such a determination is properly reserved for resolution through the outstanding dispositive motions. Finally, I order Plaintiff to file, contemporaneously with its initial deposit of the above-described funds and a bond, a status report relating: (1) the value of the deposited funds; (2) the value of the bond posted; and (3) a schedule of all future planned monthly deposits of the suspended payments to both Defendant Kristi Bennett and Defendant Marc Bennett, including the precise amounts of these payments to each defendant, to facilitate my future final judgment.

### 3.    *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.      DEFENDANT COATES'S motion to dismiss (#15) is DENIED;

2.      DEFENDANT EGAN'S motion to strike (#18) is DENIED;

3.      DEFENDANT KRISTI BENNETT'S motion to strike (#23) is DENIED;

4.      DEFENDANT KRISTI BENNETT'S motion to strike (#33) is DENIED; and

5.      PLAINTIFF'S motion for discharge in interpleader (#47) is DENIED as premature.

Dated this 2nd day of September, 2008.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge