IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07–cv–01908–MSK–KMT

AIG ANNUITY INSURANCE
COMPANY,

    Plaintiff,

v.

LAW OFFICES OF THEODORE COATES, P.C.,
DONALD J. EGAN, M.D.,
KRISTI S. BENNETT,
MARC E. BENNETT, and
HARTFORD INSURANCE GROUP,

    Defendants.

---

**OPINION AND ORDER DETERMINING MARC BENNETT'S
INTEREST IN ANNUITY PAYMENTS AND GRANTING, IN PART,
HARTFORD INSURANCE GROUP'S MOTION TO DISMISS**

---

**THIS MATTER** is an interpleader action.[1] The Plaintiff, AIG Annuity Insurance Company ("AIG") has requested that the Court declare the parties respective rights to a stream of annuity payments made by AIG to defendants Kristi and Marc Bennett. The subject annuity contract was purchased by Defendant Hartford Insurance Group ("Hartford") as part of a settlement of personal injury claims of Ryan Bennett, a minor child. When Ryan died, the

---

[1] Initiated well over a year ago, this case was assigned to Judge Edward W. Nottingham. Upon his resignation, it was assigned to the undersigned.

Denver Probate Court awarded his divorced parents, Defendants Mr. and Ms. Bennett, each a one-half interest in the stream of annuity payments. Since then, AIG has received various, conflicting demands concerning the annuity payments.

In an effort to understand, focus, and expedite determination of this matter, the Court conducted a hearing on December 19, 2008. Based upon representations of the parties at that hearing and the Court's review of the record in this matter, it appears that there is no factual dispute that Mr. Bennett and Ms. Bennett are generally entitled to equal shares – 50% each – of the stream of annuity payments.[2] Two parties to this action claim to be creditors of the Bennetts, and thus entitled to a portion of each payment. The Law Office of Theodore Coates, P.C. ("the P.C.") has not timely filed an Answer in this action, but through a variety of other pleadings, asserts an attorney's lien on the interests of both Bennetts. In addition, Defendant Donald Egan asserts a claim solely against Ms. Bennett's interest **(#4)**.

Mr. Bennett has requested expedited determination of his interest. This issue is defined by Mr. Bennett's Motion for Summary Judgment **(#73),** to which the P.C. responded **(#81)** and Mr. Bennett replied **(#90),** and applicable portions of the P.C.'s Motion for Judgment on the Pleadings **(#74),** Mr. Bennett's response **(#82)** and the P.C.'s reply brief in support thereof **(#88).**

In addition, the Court addresses Hartford's Motion to Be Dismissed as a Party **(#79)**, Ms. Bennett's response **(# 87)**, and Mr. Bennett's response **(# 89)**. Hartford requests that it be

---

[2]A lengthy and comprehensive recitation of the factual background and procedural history in this case is set forth in Judge Nottingham's Order and Memorandum of Decision **(#111)**.

discharged from this litigation as a disinterested stakeholder pursuant to 28 U.S.C. § 2361, and requests that the Court award it its attorney's fees and costs on the grounds that it is effectively an interpleader plaintiff in this action along with AIG.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to the federal interpleader statute, 28 U.S.C. § 1335.

## II. Issue Presented

In his motion, Mr. Bennett requests that the Court: (i) enter a declaratory judgment declaring that he has a one-half interest in the annuity payment stream; (ii) declare that such interest is free from any lien asserted by the P.C.; (iii) direct distribution of his portion of funds that have been deposited in the Court's registry; and (iv) direct that AIG make all future payments of his portion of annuity stream directly to him. In its response and motion for judgment on the pleadings, the P.C. contends that it has a valid and perfected attorney's lien against Mr. Bennett's share of the annuity stream, based upon its representation of Ms. Bennett in matters before the probate court.

Both AIG and Hartford have asked for an award of attorney fees as interpleader plaintiffs. *See generally United Bank of Denver v. Oxford Properties, Inc,* 683 F.Supp. 755, 756-57 (D. Colo. 1988) (recognizing Court's discretion to award fees from the common fund to an interpleader plaintiff who is disinterested, promptly concedes liability in full, deposits the disputed funds with the court, and seeks discharge).

## III. Material Facts

The Court finds the following to be the material facts. These are undisputed or, if disputed, have been construed in the light most favorable to the P.C., the party primarily opposing the relief requested by Mr. Bennett.

1.  Ms. Bennett and Mr. Bennett's son, Ryan Bennett, was severely injured at his birth in 1986. On his behalf, his parents, brought an action against Hartford for his injuries. Pursuant to a confidential settlement, Ryan Bennett became entitled to receive monthly annuity payments for a period of 30 years.[3] To fund this obligation, Hartford purchased an annuity contract from AIG's predecessor, Western National Life Insurance Company. For purposes herein, Hartford is the nominal owner of the annuity; AIG is its issuer.

2.  Also in 1986, a conservatorship was created for Ryan Bennett's benefit in the Denver Probate Court. (Case No. 86 PR 0209). Although the Probate Court initially appointed Ms. Bennett and Mr. Bennett as co-conservators, for reasons that do not appear on the record, Ms. Bennett later became the sole conservator. She was represented by the P.C. in the conservatorship proceedings.

3.  In 2001, Ryan Bennett died intestate. In 2002, a probate estate was opened in the Denver Probate Court (Case No. 02 PR 1175). In December 2002, Ms. Bennett was appointed as personal representative of the estate, but she was later replaced by R.L Steenrod as a special administrator in February, 2003. Ms. Bennett was represented by the P.C. in her efforts to be

---

[3] This obligation included $8,000.00 per month for thirty years (1986-2016), with the monthly payments increasing at a rate of five percent per year.

appointed, and to remain, as personal representative for the estate. In addition, between December 2002 and February 2003, the P.C. performed tax work for the estate.

  4. There was extensive litigation in the conservatorship case and the probate case. One major issue was whether the annuity stream was an asset of the probate estate, and if so, how it was to be distributed.. By Order dated July 25, 2003, the Probate Court determined that the annuity was an asset subject to probate administration, and that Mr. and Ms. Bennett were each entitled to 50% of the annuity stream. Ms. Bennett appealed, but that Order was affirmed by the Colorado Court of Appeals.[4] In this controversy and appeal, Ms. Bennett was represented by the P.C.

  5. In December 2006, the Bennetts and Mr. Steenrod entered into a Settlement Agreement to resolve issues arising out of the conservatorship and probate administration.[5] The Settlement Agreement contained global waivers and releases. It provided in particular part that:

> The Individual Parties hereby grant to the Special Administrator a full and complete release, discharge, waiver, satisfaction and forbearance of all claims, demands, complaints, and causes of action, whether such claims, etc., be liquid, illiquid, contingent, known or unknown and of whatsoever kind for nature which have asserted, could have been asserted, or which could be asserted in the future arising out of or which respect to his actions as the Special Administrator of the Estate of Ryan Bennett.

---

[4] Ms. Bennett sought writs of certiorari from the Colorado Supreme Court and the U.S. Supreme Court, but both requests were denied.

[5] There is some suggestion that the P.C. or Ms. Bennett submitted a claim to Mr. Steenrod for attorney fees and that it was denied. There is no evidence that the P.C. or Ms Bennett took further action to recover fees from the estate.

In negotiation and execution of this Settlement Agreement, Ms. Bennett was represented by the P.C.

6. The Probate Court approved the agreement on December 22, 2006. The probate estate administration was then completed, its assets distributed, and on March 1, 2007, the estate was closed.

7. After closure of the estate, on June 14, 2007, the P.C. filed a "Claim of Attorney Lien" in the probate case. The "Claim" notice states that the P.C. represented Ms. Bennett, pursuant to an hourly fee agreement, as personal representative from December 6, 2002 to February 25, 2003; as probate estate beneficiary from November 2, 2002 to April 9, 2007; and solely[6] as a beneficiary from February 25, 2003 to April 9, 2007. The P.C. claimed that it was owed more than $ 86,000 for 2003; more than $ 111,000 for 2004; more than $ 87,000 for 2005; and more than $ 133,000 for 2006. The P.C. asserted a lien on "all money, property, claims, and demands which may be awarded to its former client, Kristi S. Bennett . . . ." However, the Notice also stated that its lien attached to "[t]hat AIG insurance contract and policy (formerly a Western National Life insurance company policy also administered in the past by the Hartford Insurance Company) Policy Number S2326310, and any all proceeds, payments or current or future annuity streams payable thereunder." The P.C. subsequently submitted a notice to AIG that stated, in part, that "[w]e do not represent and did not at any time represent the other beneficiary, Marc E. Bennett and the attorney fee lien, attached here, does not apply to Marc E. Bennett or his interest . . . ."

---

[6]This conflicts with the prior statement, but it is not necessary to resolve the conflict.

8. On June 27, 2007, the P.C. filed a motion in the Probate Court to enforce its attorney's lien. On August 15, 2007, the Denver Probate Court denied this motion, stating in relevant part:

> The matter raised in [this motion] is MOOT as to the Special Administrator. To the extent [the P.C.] seeks to assert an attorney's lien against funds held by the Special Administrator on the date the notice of the lien was filed, there were none. All funds in connection with this case have been previously distributed to the parties determined to be entitled thereto. . . . The matter has been completed . . . and the case and file will be closed upon discharge of the Special Administrator . . . .
> To the extent [the P.C.] and [Ms. Bennett] are having a dispute regarding unpaid attorney's fees, this is a civil matter and . . . the Court has serious reservations as to whether their fee dispute comes under the jurisdiction of this court of limited jurisdiction. There is no question that Denver District Court has jurisdiction. In light of the Court's prior rulings regarding the position taken in this case by [the P.C.], the Court is also persuaded that [the P.C.] may get a more favorable ruling from another judicial officer on his claim to fees.
> Accordingly, in the event that counsel proceeds in Denver District Court against his client for fees, this Court will yield jurisdiction to that Court. If [the P.C.] persists in pursuing his claim against [Ms. Bennett] here, the matter must be set for an evidentiary hearing.

9. The record contains no evidence that any further action was taken by the P.C. for enforcement of his attorney's lien through a separate civil action in Denver District Court, or in any other forum.

10. Pursuant to Orders in this case, AIG has deposited $411,207.31 in the registry of this Court. Of this sum, $35,103.14 are payments that would have been paid to Mr. Bennett during the course of this action, but which were deposited, instead, into the Court's registry. Another $170,500 represent payments AIG made to Mr. Bennett.

11. Both AIG and the Hartford seek attorneys fees in this matter to be paid from the funds in the registry. As of the December 19, 2008 hearing, AIG claimed attorney fees of approximately $38,000; the Hartford claimed fees of $11,632.22.

**IV. Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of production at trial on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of production at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### V.  Analysis

**A.  Appearance by the P.C.**

At this juncture, it bears mention that the P.C. has not timely filed an Answer to the Complaint.  Upon the request of AIG **(# 137)**, the Clerk has entered **(# 142)** the P.C.'s default pursuant to Fed. R. Civ. P. 55(a).

The P.C. initially responded to the Complaint with a Motion to Dismiss **(# 15)** which was denied by an Order **(# 111)** issued on September 2, 2008.  By operation of Fed. R. Civ. P. 12(a)(4)(A), the P.C. was required to Answer within 10 days after notice of the Court's denial of the Motion to Dismiss, but it did not do so.  However, the P.C. has asserted its claim via a lien on

the interests of the Bennetts in various motions, responses, and replies.[7] In addition, the P.C. has appeared before the Court and exercised every right held by an answering Defendant.[8]

The Court could allow the default to stand, and disregard the P.C.'s various motions and responses. Doing so would warrant judgment against the P.C. by default, releasing the funds allegedly encumbered by the P.C. to the Bennetts, and require the P.C. to attempt to enforce its lien in a court that the P.C. purports to have jurisdiction over the issue. Alternatively, the Court could treat the P.C.'s various filings, collectively, as the equivalent of an Answer, thus raising the P.C.'s substantive claim of a lien upon the annuity stream for determination on the merits in this Court. In doing so, the Court would be able to conclusively adjudicate the P.C.'s substantive rights in the funds, avoiding the need for prolonged and duplicative litigation, and facilitating all interested parties' prompt access to the funds. Given that the P.C. has knowingly and fully participated in these proceedings, including raising substantive arguments inconsistent with any purported "special appearance" entered solely to raise a jurisdictional objection, the Court deems the P.C.'s filings to constitute an Answer, asserting the P.C.'s claim to the funds by virtue of its attorney's lien.

---

[7] The motions and responses in which it asserts an attorney's lien include Docket # 74, 80, 81, 82, 83, 88, 89, 93, and 132.

[8] This belies the repeated assertion by the P.C. that it intended to enter a "special" rather than a "general" appearance.

### B. Mr. Bennett's interest

For purposes of this Order, the Court considers the parties' positions only as they relate to Mr. Bennett's interest in the funds. For evident reasons, the Court will deal with Ms. Bennett's interest in later proceedings.

Mr. Bennett claims entitlement to one-half of the monthly annuity payments (both past and future) based on the Denver Probate Court's December 22, 2006, Order, free of any lien by the P.C. The P.C. contends in its response and in its Motion for Judgment on the Pleadings that it has a valid and enforceable attorney's lien against Mr. Bennett's share of the annuity funds. Although the P.C.'s response and motion lack coherency in many respects, the Court understands it to assert that the asserted lien secures payment for work the P.C. performed for Ms. Bennett in her capacities as personal representative and beneficiary of Ryan Bennett's estate between 2003 and 2006.

Ordinarily, Mr. Bennett's Motion for Summary Judgment and the P.C.'s Motion for Judgment on the Pleadings would be determined independently, but in this case they be considered simultaneously. In an interpleader action, each claimant to the *res* bears the burden of proof in establishing his respective interest. *See, e.g.*, *Marine Indem. Ins. Co. of Am. v. Lockwood Warehouse and Storage*, 115 F.3d 282, 289 (5th Cir. 1997) ("[A] claimant to the interpleaded funds[] ha[s] the burden of establishing by the preponderance of the evidence that it was entitled to recover."); *see also Clifton v. Anthony*, 401 F. Supp. 2d. 686, 689 (E.D. Tex. 2005) (same); *In re The Kelly Group, Inc.*, 159 B.R. 472, 476 (W.D. Va. 1993) (same).

Thus, Mr. Bennett has the burden of establishing his 50% interest in the annuity payments. The P.C. has the burden of establishing its lien, or at least a genuine dispute as to a material fact with regard to its lien.

In asserting a one-half interest in the stream of annuity payments, Mr. Bennett invokes the doctrine of *res judicata*. Under the full faith and credit statute, 28 U.S.C. § 1738, "the preclusive effect of a state judgment is governed by the rules of preclusion of that state." *B. Wills, C.P.A., Inc. v. BNSF Ry. Co.*, 531 F.3d 1282, 1300 (10th Cir. 2008); *see also* 28 U.S.C. § 1738 (2006). Under Colorado law, claim preclusion bars relitigation of an claim when (1) the claim sought to be precluded was determined in prior proceeding; (2) the party against whom estoppel is asserted was a party to or is in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *People v. Lewis,* ___P.3d ___2008 WL 90240, at *5 (Colo. Ct. App. Jan 10, 2008) .

Mr. Bennett has established every element required to give the Probate Court judgment deference under the doctrine of *res judicata.* In addition, there appears to be no dispute that he is entitled to a one-half interest in the annuity stream.

### C. The P.C.'s Lien Claim

The evidence before the Court, however, does not establish that the P.C. has a valid attorney's lien that encumbers Mr. Bennett's interest in the annuity payments.

Attorney's liens are creations of state law. Colorado statutory law grants an attorney a lien on "any judgment they may have obtained or assisted in obtaining" for the payment of fees

owed by a client. Colo. Rev. Stat. § 12–5–119 (2008). This lien "attaches automatically to any monies or property due or owing <u>to the client</u> on any underlying judgment . . . to the extent of the attorney's reasonable fees due and unpaid." *Gold v. Duncan Ostrander & Dingess, P.C.*, 143 P.3d 1192, 1993 (Colo. Ct. App. 2006) (emphasis added). The attorney's lien is "chargeable against any person who, at the time notice of intent to claim a lien is given, holds money or property which become proceeds of a judgment to be entered in the future." *In re Marriage of Smith*, 687 P.2d 519, 520 (Colo. Ct. App. 1984). In other words, an attorney's lien attaches only to funds that are or will become owed to the attorney's client.

The showing by the P.C. is inadequate to prove the existence of a valid lien against Mr. Bennett's interest in the annuity stream. It is clear that the P.C. never represented Mr. Bennett. Because the P.C. has failed to show any facts that would establish an attorney-client relationship between itself and Mr. Bennett, the P.C. has no direct lien against funds owing to Mr. Bennett by virtue of the judgment awarding an interest in the annuity stream to him. Arguably, the P.C. claims a lien in proceeds belonging to its former client, Ms. Bennett. Assuming, without deciding, that this is true, there nevertheless has not been any showing by the P.C. that Mr. Bennett now holds or is likely to hold in the future any property belonging to Ms. Bennett as the result of the Probate Court's judgment.

Although it is not clearly articulated, it appears that the P.C. asserts a lien on the funds in order to secure its claim for fees incurred in its representation of Ms. Bennett as a conservator and personal representative of the estate. As to such fees, the P.C. would step into the shoes of Ms. Bennett, and on her behalf, could have asserted a claim on the estate(s) for compensation for

services rendered. *See, e.g.*, Colo. Rev. Stat. § 15–12–803(2)(a) (2008) (a claimant seeking payment for services rendered to the probate estate must present his claim within four months of when payment his due); Colo. Rev. Stat. §15–12–721 (2008) (listing factors to be considered in determining whether attorney's fees incurred by a probate estate are reasonable). It appears that such a claim may have been submitted by Ms. Bennett to Mr. Steenrod, the special administrator, but that the claim was disallowed. Under Colorado probate law, a disallowed claim is barred unless a claimant timely files a petition for allowance with the probate court. *See, e.g.*, Colo. Rev. Stat. § 15–12–806 (2008) (stating that a claimant has sixty days to file a petition for allowance following disallowance of a claim). The P.C. has presented no evidence that such a petition was filed with the Denver Probate Court, nor that such a petition was granted.

More importantly, in the Settlement Agreement, Ms. Bennett expressly waived and released all claims, known or unknown, arising out of the probate estate. The generality of the waiver and release encompasses claims for reimbursement for attorney fees that she incurred in her capacity as conservator in the conservatorship and personal representative for the probate estate. Thus, the Court finds that there is no extant debt owed by the probate estate to the P.C. for services it rendered to Ms. Bennett in her capacity as conservator or personal representative. Without a cognizable debt owed by the estate to the P.C., there can be no lien by the P.C. on the estate's assets.

Finally, the completion of the administration and closure of a probate estate foreclosed claims by creditors of the decedent or of the estate. *In re Estate of Schuler*, 981 P.2d 1109, 1114-15 (Colo. App. 1999). As noted in the Order of the probate court on the P.C.'s Motion for

Enforcement of its lien, the probate estate had been fully administered and its assets distributed at the time the notice of the P.C.'s lien was filed with the Probate Court. Thus, Mr. Bennett received his interest in the annuity stream free of any lien claimed by the P.C.

Construing the evidence presented most favorably to the P.C., the Court finds that it has failed to make a *prima facie* showing that it has valid lien on Mr. Bennett's one-half share of the monthly annuity payments. Because the P.C. has the burden of proof on this issue and has had full and ample opportunity to present all evidence upon which it relies, the Court declares as a matter of law that the P.C. has no lien on Mr. Bennett's interest in the annuity payment stream.

**D. Hartford's motion**

Finally, the Court disposes of Hartford's Motion to Dismiss itself from the litigation. Hartford, admittedly, does not claim any interest in the funds at issue here. On that ground, Hartford's motion to dismiss is granted.

However, the Court denies Hartford's request for attorney's fees in conjunction with such dismissal. For purposes of this Order only, the Court assumes that an award of fees from the subject funds is appropriately made to the interpleader plaintiff. However, Hartford is not the plaintiff in this action. It does not have control of the contested funds, and thus, does not have the ability to deposit them in the court. *C.f. United Bank of Denver,* 683 F.Supp. at 756-57. Hartford's appearance in this case as a defendant was made only to preserve Hartford's interest in ensuring that the distribution of the challenged funds does not later expose Hartford to a charge that it has failed to comply with the terns if the settlement of Ryan Bennett's claims. Its interest in the funds is only remote and collateral, and its participation in this lawsuit fails to

serve any of the salutary purposes that warrant making an award of fees to an interpleader plaintiff – creating an expeditious means to resolve competing claims; making the funds available for immediate distribution without need for extensive execution proceedings, etc. *Id.* at 757. The Court declines Hartford's invitation to extend the general rule permitting an award of fees to the plaintiff to a party who appears in the litigation only by virtue of having been a prior owner of the funds at issue with now current claim to them. Accordingly, to the extent Hartford's motion seeks an award of fees, that motion is denied.

## V. Conclusion

There being no genuine dispute as to any material fact regarding the award of one-half of the monthly annuity payments to Mr. Bennett or the existence of a lien in favor of the P.C., there is no need for trial to determine Mr. Bennett's interest in the annuity stream. As a matter of law, Mr. Bennett's is entitled to receive his 50% interest in the annuity stream free from any claim by the P.C.

This Order conclusively resolves and enters judgment: (i) in favor of Mr. Bennett, declaring his entitlement to 50% of the annuity funds past and future (subject to AIG's claim for attorney's fees); (ii) in favor of Mr. Bennett to the extent that the P.C. purports to hold a lien against those funds; and (iii) in favor of the remaining Defendants as to Hartford's request for attorney's fees to be drawn from the deposited funds.

The Court does not, at this juncture, determine whether there is any encumbrance on Ms. Bennett's 50% share in the annuity stream. All funds in the registry attributable to her interest

will remain, and to facilitate the determination of AIG's request for an award of attorney fees from the fund, the Court will reserve $38,000.

It is therefore **ORDERED** that:

1. The Clerk's Entry of Default against the P.C. **(#142)** is **VACATED.** The Motion by AIG for Default Judgment **(#143)** is **DENIED**;

2. Mr. Bennett's Motion for Summary Judgment **(#73)** is **GRANTED**. A declaratory judgment is to be entered determining that Mr. Bennett's one-half share of the monthly annuity payments is free from any lien by the P.C.;

3. The clerk shall release $16,103.14 to Mr. Bennett from the registry of the Court. This sum represents his share ($35,103.14) less one-half of the attorney fee reserve for AIG's fees;

4. The clerk shall also release $170,500 from the registry to AIG. AIG shall resume its suspended monthly annuity payments to Mr. Bennett from this date forward; and

5. Hartford's Motion to be Dismissed **(# 79)** from this case is **GRANTED IN PART**, insofar as it is **DISMISSED** from this action, and **DENIED IN PART**, insfoar as it is not entitled to an award of fees. The caption of this case is **AMENDED** to hereafter omit Hartford as a party.

Dated this 22d day of December, 2008

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge