IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01908-MSK-MJW

AIG ANNUITY INSURANCE COMPANY,

        Plaintiff,

v.

LAW OFFICES OF THEODORE COATES, P.C.;
DONALD J. EGAN, M.D.;
KRISTI S. BENNETT; and
MARC E. BENNETT,

        Defendants.

---

**ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT
AND SETTING HEARING**

---

**THIS MATTER** comes before the Court pursuant to Defendant Kristi Bennett's ("Ms. Bennett") Motion for Summary Judgment **(# 72)**, Defendant Law Offices of Theodore Coates, P.C.'s ("the P.C.") response **(# 80)**, and Ms. Bennett's reply **(# 84)**; the P.C.'s Motion for Judgment on the Pleadings **(# 74)**, Defendant Marc Bennett's ("Mr. Bennett") response **(# 82)**, and the P.C.'s reply **(# 88)**; Defendant Donald Egan's Motion to Strike **(# 77)** the P.C.'s Motion for Judgment on the Pleadings, the P.C.'s response **(# 83)**; and Ms. Bennett's Motion to Strike **(# 78)** the P.C.'s Motion for Judgment on the Pleadings, the P.C.'s response **(# 85)**, Ms. Bennett's reply **(# 91)**, and the P.C.'s surreply **(# 102)**.

## FACTS

The facts pertinent to resolution of the current issues before the Court are effectively

1

undisputed.[1] This interpleader action seeks to resolve the ownership of funds reflecting an annuity belonging to the late Ryan Bennett, the child of Mr. and Ms. Bennett. The annuity was established in Ryan Bennett's name in the 1980s as settlement of a medical malpractice lawsuit. Former defendant Hartford Insurance Group, the insurer of the malpractice defendants, purchased the annuity from Plaintiff AIG. Since Ryan's death in 2001, a dispute has arisen over the proper payees on the annuity, and AIG has commenced this interpleader action to resolve those disputes.

Following Ryan's death in 2001, a probate estate was opened in the Denver Probate Court. At some point in late 2002, the P.C. began representing Ms. Bennett is various proceedings, including the filing of a claim in the probate proceeding.[2] A major issue in the probate proceeding was whether the annuity stream was an asset of the probate estate, and if so, how it was to be distributed. Although the Probate Court determined as early as November 2002 that Mr. and Ms. Bennett were Ryan's only heirs, *Docket* # 72, Ex. A10, Ms. Bennett argued to the Probate Court that she assumed full ownership of the annuity stream after Ryan's death, and thus, the annuity was not an asset of Ryan's estate subject to probate. By Order dated July 24,

---

[1] To the extent additional factual discussion and background is necessary, the recitation in the Court's December 22, 2008 Order (**# 144**) is deemed incorporated herein.

[2] Ms. Bennett retained the services of Mr. Coates as early as 1992, at a time when Mr. Coates was associated with a different law firm. However, this fact is of no significance, as it is undisputed that the P.C. only came into being in late 2002. It is important to note that the P.C. is the named party in this matter, not Mr. Coates individually. Thus, to the extent the P.C. has a lien in this case, such a lien can only relate to services that were provided after the P.C.'s inception. (Put differently, whether Ms. Bennett owes debts to Mr. Coates personally relating from the prior representation, or whether Mr. Coates assigned any such debts to the P.C. are not germane to the question of whether the P.C. – the party in this case – is entitled to a lien on Ms. Bennett's property for services it – the P.C. – provided to her.)

2003, the Probate Court rejected this argument (finding it to be frivolous and sanctionable) and instead determined that the annuity was an asset subject to probate administration, to be distributed to Ryan's heirs. *Docket* # 72, Ex. A12. Ms. Bennett appealed, but that Order was affirmed by the Colorado Court of Appeals.[3] *Docket* # 72, Ex. A9. Although the July 24, 2003 Order that the annuity passed to Ryan's heirs, coupled with the November 20, 2002 Order designating Mr. and Ms. Bennett as Ryan's only heirs, would seem to have resolved the issue of entitlement to the annuity, litigation over various issues relating to the distribution of the annuity's assets continued.

In December 2006, Mr. and Ms. Bennett and the Special Administrator of Ryan's estate entered into a settlement agreement resolving all remaining claims related to, among other things, the annuity. *Docket* # 72, Ex. A5. Although the record does not reflect the precise date, it is undisputed that the Probate Court approved the settlement and directed final disposition of the annuity, among other assets, consistent with its terms. This order, then, finally and conclusively established Ms. Bennett's entitlement to a portion of the annuity funds.

The probate estate administration was then completed, its assets distributed, and on March 1, 2007, the estate was closed. *Docket* # 72, Ex. A13. After closure of the estate, on June 14, 2007, the P.C. filed a "Claim of Attorney Lien" in the probate case. *Docket* # 72, Ex. A2. The "Claim" notice states that the P.C. represented Ms. Bennett, pursuant to an hourly fee agreement, as personal representative of the estate from December 6, 2002 to February 25, 2003, and as a beneficiary from February 25, 2003 to April 9, 2007. The P.C. claimed that it was

---

[3] Ms. Bennett sought writs of certiorari from the Colorado Supreme Court and the U.S. Supreme Court, but both requests were denied.

owed more than $ 86,000 for 2003; more than $ 111,000 for 2004; more than $ 87,000 for 2005; and more than $ 133,000 for 2006. The P.C. asserted a lien on "all money, property, claims, and demands which may be awarded to its former client, Kristi S. Bennett," including "[t]hat AIG insurance contract and policy (formerly a Western National Life insurance company policy also administered in the past by the Hartford Insurance Company) Policy Number S2326310, and any all proceeds, payments or current or future annuity streams payable thereunder."

On June 27, 2007, the P.C. filed a motion in the Probate Court to enforce its attorney's lien. On August 15, 2007, the Denver Probate Court denied this motion, stating in relevant part:

> The matter raised in [this motion] is MOOT as to the Special Administrator. To the extent [the P.C.] seeks to assert an attorney's lien against funds held by the Special Administrator on the date the notice of the lien was filed, there were none. All funds in connection with this case have been previously distributed to the parties determined to be entitled thereto. . . . The matter has been completed . . . and the case and file will be closed upon discharge of the Special Administrator . . . .
>
> To the extent [the P.C.] and [Ms. Bennett] are having a dispute regarding unpaid attorney's fees, this is a civil matter and . . . the Court has serious reservations as to whether their fee dispute comes under the jurisdiction of this court of limited jurisdiction. There is no question that Denver District Court has jurisdiction. In light of the Court's prior rulings regarding the position taken in this case by [the P.C.], the Court is also persuaded that [the P.C.] may get a more favorable ruling from another judicial officer on his claim to fees.
>
> Accordingly, in the event that counsel proceeds in Denver District Court against his client for fees, this Court will yield jurisdiction to that Court. If [the P.C.] persists in pursuing his claim against [Ms. Bennett] here, the matter must be set for an evidentiary hearing.

*Docket* # 72, Ex. A16. The record contains no evidence that any further action was taken by the P.C. for enforcement of his attorney's lien through a separate civil action in Denver District Court, or in any other forum.

Ms. Bennett moves for summary judgment **(# 72)** on the P.C.'s claim to the funds by

4

virtue of the attorney's lien. Specifically, she argues that: (i) because the funds at issue here arise from settlement of a lawsuit that preceded the P.C.'s representation of Ms. Bennett, they are not subject to a lien under C.R.S. § 12-5-119; (ii) $57,325 of the fees claimed by the P.C. should be denied on the grounds that they reflect time spent by the P.C. attempting to obtain a result (sale of the annuity) that Ms. Bennett had not authorized; (iii) $ 181,155 in fees claimed by the P.C. should be denied on the grounds that they reflect time spent by the P.C. urging an argument (that the effect of the written settlement agreement resolving Ryan Bennett's claims should be construed to provide for 100% of the annuity to pass to Ms. Bennett upon Ryan's death) that was found by the Colorado Court of Appeals to be groundless and frivolous; and (iv) $ 160,000 in fees claimed by the P.C. are unreasonable, in that they are reflected in bulk billing entries or are patently unreasonable on their face.

The P.C.'s response **(# 80)** is highly unfocused and wandering. Sifting that response as much as possible, the Court can ascertain the following arguments that are arguably responsive to the issues raised by Ms. Bennett's motion are: (i) the argument that Ms. Bennett was entitled to 100% of the annuity was reasonable, insofar as the probate court engaged in certain misconduct, denying Ms. Bennett of a jury trial right, and that Ms. Bennett approved the P.C.'s recommendation that the particular arguments be raised; (ii) the P.C. never attempted to "sell" the annuity, as Ms. Bennett had no legal interest to it as of this time period; (iii) the P.C.'s lien is not as to the settlement of Ryan Bennett's suit, but rather, to the proceeds of the December 22, 2006 judgment of the Probate Court granting Ms. Bennett 50% of the annuity funds; (iv) with regard to Ms. Bennett's contention that the P.C.'s fees are unreasonable, this is an improper attempt to amend Ms. Bennet's Answer in Interpleader **(# 5)**, which does not assert such

5

arguments; (v) that the orders of the Probate Court do not purport to resolve the issue of whether the P.C. retains a lien with regard to the funds at issue; and (vi) Ms. Bennett's request for relief is barred by the doctrine of unclean hands, in that she has borrowed funds from Defendant Egan in an attempt to subrogate the P.C.'s claim to the funds.

The parties have filed additional motions which, for reasons discussed herein, the Court need not reach.

## ANALYSIS

**A. Standard of review**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of production at trial on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of production at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. The P.C.'s entitlement to a lien**

Ms. Bennett's first argument is that the funds at issue here are not subject to the P.C.'s lien because they were not secured through the efforts of the P.C. C.R.S. § 12-5-119 provides that:

> All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case

7

>  of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees.

An attorney can maintain a charging lien under C.R.S. § 12-5-119 on "any judgment the attorney may have obtained or assisted in obtaining, in whole or in part" or on "claims or choses in action" – *i.e.* "the client's claim against another for money due." *Gold v. Duncan, Ostrander & Dingess, P.C.*, 143 P.3d 1192, 1193 (Colo. App. 2006); *Cope v. Woznicki*, 140 P.3d 239, 241 (Colo. App. 2006). The burden of proving the entitlement to the lien rests on the attorney asserting it. *See People v. Gray*, 35 P.3d 611, 618 (Colo. Off. Presid. Discip. J. 2001).

Ms. Bennett argues that her entitlement to the funds at issue here flows from the settlement of Ryan Bennett's claims in the 1980s, a settlement that was reached long before the P.C. began its representation of Ms. Bennett. That contention is clearly misplaced. The key order in the probate case was the July 24, 2003 Order that concluded that the annuity was an asset belonging solely to Ryan Bennett at the time of his death, and rejecting Ms. Bennett's argument that the annuity stream actually belonged to her. Although one could argue that the combination of the November 20, 2002 and July 24, 2003 Orders implicitly conferred a right in Ms. Bennett to 50% of the annuity as of the latter date, it was not until the Probate Court approved the parties' December 2006 settlement that Ms. Bennett's entitlement to the annuity funds became both actual and quantified. Thus, it is the date of the Probate Court's approval of

8

the settlement and entry of judgment in favor of Ms. Bennett – a date that does not appear in this record – that finally conferred an ownership interest in the funds at issue in this case. It is undisputed that the P.C. "assisted in obtaining" that judgment in her favor. Under C.R.S. § 12-5-119, this is sufficient to entitle the P.C. to a lien against those funds.[4] Accordingly, the P.C. is entitled to summary judgment as to the existence of its lien against the interpleaded funds here.[5] The Court must then turn to the question of the debt secured by that lien.

### C. Amount of the lien

The attorney's right to the lien extends only to unpaid fees for those professional services rendered in obtaining the judgment at issue, not for unrelated services. *People v. Mills*, 861 P.3d 708, 710 (Colo. 1993); *Matter of Estate of Benney*, 790 P.3d 319, 323, 325 (Colo. 1990) ("the attorney's charging lien is limited to securing the payment of those attorney fees attributable to the case in which the judgment was entered"). It is undisputed that the P.C. represented Ms. Bennett in a variety of capacities – as conservator of Ryan Bennett, as a person claiming ownership of the annuity from the probate estate, and as an heir claiming within the probate process – during the time period at issue. Only those services that led to the Probate Court judgment awarding her a portion of the annuity stream as an heir to Ryan Bennett would fall within the P.C.'s lien. Moreover, the P.C. is only entitled to recover the <u>reasonable</u> fees billed

---

[4]The parties have not raised, and the Court has not considered, any arguments as to the timeliness or sufficiency of the lien filed by the P.C. in the probate case.

[5]Although Ms. Bennett is the summary judgment movant here, the Court can grant summary judgment to a non-movant when the movant's filings show no genuine dispute as to the non-movant's entitlement to relief. *See* Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 2720 ("[S]ummary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.").

with regard to obtaining that judgment. *Benney*, 790 P.2d at 323; *In re Marriage of Berkland*, 762 P.2d 779, 782 (Colo. App. 1988).

Ms. Bennett contends that the vast majority of the fees billed by the P.C. are either unrelated to securing the Probate Court judgment or are unreasonable in amount. In determining the reasonableness of fees sought by the P.C., the Court uses the familiar "lodestar" analysis, by which the Court multiplies a reasonable hourly rate times the number of hours reasonably expended, and then makes certain adjustments if appropriate. *See generally Dubray v. Intratribal Bison Co-Op.*, 192 P.3d 604, 608 (Colo. App. 2008). Ms. Bennett does not challenge the rates charged by the P.C., but does take issue with the majority of the billing entries.

Having reviewed the record extensively, the Court is unable to rule on the arguments raised by Ms. Bennett with regard to the P.C.'s billings. First, the Court is unable to correlate the representations made by Ms. Bennett in her motion and supporting affidavit, *see Docket* # 72, Ex. A7, with the supporting evidentiary material. For example, Ms. Bennett contends that $57,325 in billing entries, as reflected in Exhibit A1, represent time spent by the P.C. attempting to sell or liquidate some portion of the annuity stream. Her affidavit states that the billing entries relating to this issue are marked with an asterisk. Having reviewed all 8 parts of Exhibit A1, the Court has ascertained that the entries marked with an asterisk total more than $73,000.[6]

---

[6]Moreover, some billing entries that would appear to fall within this category are not identified with an asterisk. For example, an entry dated April 15, 2005, for "Additional work during April monthly billing period on loan application/extension of existing loan structure on Dr. Egan loan. Correspondence with Mrs. Bennett and Mr. Forhan on same . . ." is not designated with an asterisk, even though many (but not all) other entries referencing Dr. Egan or Mr. Forhan are. *Docket* # 72, Ex. A1, part 4 at 7. Likewise, entries dated April 22, 2006 and May 2, 2005 reading "Meet with Mr. Forhan" are designated with an asterisk, while an identical entry dated April 22, 2005 is not. *Id.* at 8.

10

Similarly, Ms. Bennett purports to challenge $ 160,000 in billing entries that are purportedly marked with a "%" symbol. *Docket* # 72, Ex. A7, ¶ 20. However, throughout Exhibit A1, the Court finds only four instances in which an item is designated with a "%" symbol, and those entries total just over $41,000.[7] *Docket* # 72, Ex. A1, part 1 at 8; *Docket* # 72, Ex. A1, part 5 at 2*; Docket* # 72, Ex. A1, part 5 at 15. Simply put, the Court is unable to correlate Ms. Bennett's contentions with the supporting evidence.

The Court finds that Ms. Bennett has failed to carry her burden on summary judgment of showing that there is no genuine dispute of fact under Fed. R. Civ. P. 56(c) with regard to the relation of the P.C.'s billings to the Probate Court judgment or to the reasonableness of the amounts billed. Accordingly, her challenges to those billings must await a trial or further proceedings.

Accordingly, Ms. Bennett's Motion for Summary Judgment is granted in part and denied in part. The Motion is granted, insofar as the Court finds that there is no genuine dispute of material fact with regard to the P.C.'s entitlement to a charging lien under C.R.S. § 12-5-119 with regard to the proceeds of the Probate Court's judgment that Ms. Bennett is entitled to a portion of the annuity funds, and the Court finds in favor of the P.C. on this issue. The Motion is denied insofar as there is a genuine dispute of material fact with regard to the <u>amount</u> of that lien, and additional proceedings – whether by trial or otherwise – will be necessary to resolve

---

[7]In Ms. Bennett's motion itself, she again indicates that the $ 160,000 in contested billing entries are designated in Exhibit A1 with a "%" symbol, but also directs the Court to Exhibit A6. *See Docket* # 72 at 6. Exhibit A6 is entitled "Specific Billing Excerpts," and consists of 9 pages of billing entries, none of which are marked with any distinguishing symbol of any kind. The total value of billing entries identified on Exhibit A6 is $ 225,000. Thus, it is not clear which portions of Exhibit A6 constitute the $ 160,000 in entries challenged by Ms. Bennett.

this question.[8]

   **D. Remaining motions**

   Having concluded that the P.C. is entitled to summary judgment with regard to the existence of a charging lien against Ms. Bennett's interest in the funds at issue and the Court's

---

[8]In an attempt to focus the parties on the limited issue of the reasonable amount of fees billed by the P.C. in obtaining the Probate Court judgment (as opposed to representing Ms. Bennett in other capacities or on other issues), the Court summarily rejects a number of arguments made by the P.C. in its response to Ms. Bennett's motion.
   The Court rejects the argument that Ms. Bennett's challenges to the P.C.'s billings constitute an untimely amendment to her Answer in Intervention. As an interpleader claimant, the P.C. has its own burden of establishing both the fact and amount of its entitlement to the funds at issue. *In re Bank of New England Corp.*, 359 B.R. 384, 389 (Bankr. D. Mass. 2007) ("Each claimant must show his or her entitlement to the disputed funds by a preponderance of the evidence. All claimants must recover on the strength of their own title, rather than on the weakness of that of the adversary"). Thus, regardless of whether Ms. Bennett ever raised the issue in her own Answer, the P.C. will be required to come forward with affirmative evidence demonstrating that the fees it demands are reasonable and related to the procurement of the judgment in the Probate Court.
   Second, the Court rejects arguments by the P.C. that it is entitled to a lien for fees reflecting time spent attempting to liquidate the loan proceeds. Regardless of whether they were pursued with or without Ms. Bennett's consent or approval, these fees were obviously incurred for purposes collateral to obtaining the judgment from the Probate Court that Ms. Bennett was entitled to a portion of the annuity funds.
   Similarly, the Court rejects the P.C.'s argument that it can recover fees for asserting arguments before the Probate Court that were found to be frivolous and sanctionable, as well as fees incurred in appealing the Probate Court's July 24, 2003 order. Fees billed for arguments found to be frivolous and sanctionable cannot, by definition, be reasonable. Moreover, the pursuit of these unsuccessful arguments did not assist in obtaining the judgment favorable to Ms. Bennett – indeed, the position taken by the P.C. and Ms. Bennett on this issue is antithetical to the grounds upon which the Probate Court eventually entered judgment in Ms. Bennett's favor. The Court also rejects any attempt by the P.C. to collaterally attack the Probate Court's findings that these arguments warranted sanctions. Such findings were fully litigated by Ms. Bennett and the P.C. and sustained on appeal. Thus, they are entitled to preclusive effect in this proceeding.
   Finally, the Court ascertains that the P.C. has tendered a variety of utterly incomprehensible arguments in its response to Ms. Bennett's motion. The Court summarily rejects any and all remaining arguments by the P.C. that do not relate to the narrow question of "what fees were reasonably billed for obtaining the judgment in favor of Ms. Bennett before the Probate Court?".

conclusion that ascertaining the value of that lien will require a trial or further proceedings, the Court need not reach the arguments in the P.C.'s Motion for Judgment on the Pleadings. That motion is thus denied as moot, as are Ms. Bennett's and Mr. Egan's Motions to Strike.

**E.  Setting hearing**

It appears to the Court that the following issues must be resolved to conclude this matter:

> 1.  Quantification of the value of the P.C.'s lien (*i.e.* the reasonable value of the services provided by the P.C. in obtaining the Probate Court judgment in favor of Ms. Bennett);
>
> 2.  Determination of the extent and value of Mr. Egan's interest, if any, in the funds at issue;
>
> 3.  If Mr. Egan is found to have an interest in the funds, ascertainment of the relative priorities of that interest as against the P.C.'s lien and Ms. Bennett's interest;
>
> 4.  Determination of, and if necessary, quantification of, AIG's entitlement to attorney's fees; and
>
> 5.  Entry of final judgment.

To facilitate resolution of these issues, the Court will conduct a non-evidentiary hearing at **1:30 p.m.** on **Wednesday, February 25, 2009**, to establish the procedures by which these remaining issues will be resolved and to set an appropriate schedule.   Counsel shall bring their calendars.

## CONCLUSION

For the foregoing reasons, Ms. Bennett's Motion for Summary Judgment **(# 72)** is **GRANTED IN PART**, insfoar as the Court finds that the P.C. is entitled to a charging lien on Ms. Bennett's interest in the funds at issue, and **DENIED IN PART**, insfoar as a trial or other proceeding will be necessary to quantify the value of that lien.  The P.C.'s Motion for Judgment

13

on the Pleadings **(# 74)**, Defendant Donald Egan's Motion to Strike **(# 77)** the P.C.'s Motion for Judgment on the Pleadings, and Ms. Bennett's Motion to Strike **(# 78)** the P.C.'s Motion for Judgment on the Pleadings are **DENIED AS MOOT**. The Court will conduct a non-evidentiary hearing at 1:30 p.m. on February 25, 2009 for the purposes discussed above.

Dated this 12th day of February, 2009

                                      **BY THE COURT:**

                                      */s/ Marcia S. Krieger*

                                      Marcia S. Krieger
                                      United States District Judge