IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01908-MSK-MJW

AIG ANNUITY INSURANCE COMPANY,

   Plaintiff,

v.

LAW OFFICES OF THEODORE COATES, P.C.;
DONALD J. EGAN, M.D.;
KRISTI S. BENNETT; and
MARC E. BENNETT,

   Defendants.

_____

**OPINION AND ORDER GRANTING MOTIONS, DECLARING RIGHTS IN
INTERPLEADED FUNDS AND DIRECTING DISTRIBUTION**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff AIG Annuity Insurance Co.'s ("AIG") Motion to Discharge Plaintiff **(# 176)**, responses by Kristi Bennett **(# 187)**, Marc Bennett **(# 189)**, and the Law Offices of Theodore Coates, P.C. ("the Law Offices") **(# 190)**, and AIG's reply **(# 196)**; a Motion for Summary Judgment by Mr. Egan **(# 178)**, responses by Ms. Bennett **(# 186)**, and the Law Offices **(# 191**, as amended **# 192)**, Ms. Bennett's reply to the Law Office's response[1] **(# 195)**, and Mr. Egan's reply **(# 198)**; and the Law Offices' Motion for Summary Judgment **(# 179)**, responses by Mr. Egan **(# 185)**, and Ms.

---

[1] It is not clear what procedural authority Ms. Bennett cites for filing a response to the Law Offices' response. This filing essentially duplicates arguments made by Ms. Bennett in opposition to the Law Offices' motion.

1

Bennett **(# 188)**, and the Law Offices' reply **(# 197)**.

The reader's familiarity with the proceedings to date is assumed, and to the extent necessary, the factual recitation contained in this Court's prior Orders of December 22, 2008 **(#144)** and February 12, 2009 **(# 166)** is incorporated herein. In summary, the Bennetts are co-owners of a stream of annuity payments from AIG. Competing claims to those payments have arisen, and AIG commenced this action to interplead the payments and allow the claimants to resolve their relative rights thereto. The Court has determined **(# 144)** Mr. Bennett's share of the payments, and the remaining issue is the relative entitlement of Ms. Bennett, Mr. Egan, and the Law Offices to Ms. Bennett's share of the payments.

AIG, Mr. Egan, and the Law Offices have each moved for an award of a portion of the fund. The respective positions of the parties are stated as follows:

> • AIG seeks **(# 176)** discharge from the action along with an award of attorney's fees in the amount of $ 45,590.02, pursuant to *U.S. Fidelity & Guar. Co. v. Sidwell*, 525 F.2d 472, 475 (10th Cir. 1975) (recognizing the "common practice" of awarding reasonable attorney's fees to an interpleader plaintiff out of the common fund). No party objects to AIG's discharge from the action. Ms. Bennett does not oppose an award of fees to AIG, but contends that, to the extent fees were incurred by AIG as a result of the Law Offices' actions, such fees should be set off against any recovery by the Law Offices from the fund. The Law Offices register a lengthy, largely unfocused and occasionally incomprehensible objection to an award of fees to AIG. Mr. Bennett contends that he should not be liable for any of AIG's fees because his share of the annuity was not subject to adverse claims. In the alternative, if he is to be subject to a fee award in favor of AIG, Mr. Bennett disputes certain aspects of AIG's fee request, including the failure to certify the qualifications of counsel and the excessiveness of the hourly rates requested.
>
> • Mr. Egan seeks **(# 178)** an award of $187,500, reflecting the amount owed by Ms. Bennett to him for two loans made by him to her in 2004 and 2007, secured by Ms. Bennett's pledge of the

proceeds of the annuity. Mr. Egan contends that his lien on the
annuity proceeds from this agreement takes priority over the Law
Offices' claim to the funds because it was obtained by Mr. Egan
prior to and without notice of the Law Offices' attorney's lien on
the funds. The Law Office, in a response that is unfocused and
sometimes difficult to parse, appears to contend that Mr. Egan has
failed to supply adequate evidence of the debt he claims Ms.
Bennett owes and, further, that its attorney's lien is entitled to
priority over Mr. Egan's lien.

• The Law Offices seek **(# 179)** an award of $671,196 pursuant to
an attorney's lien on the annuity proceeds. Ms. Bennett contends
that, at most, the Law Offices' lien is worth only $ 54,919.47, with
the remaining amount requested by the Law Offices being charges
for work unrelated to the obtaining of the annuity in the Probate
Court. Mr. Egan stands on his argument that his lien on the
annuity proceeds is superior to the Law Offices.

According to AIG's December 19, 2008 Status Report **(# 139)**, the amount of interpleaded funds attributable to Ms. Bennett's interest in the annuity is approximately $401,039.[2] An additional $38,000 was withheld from Mr. Bennett's interest to account for the possibility of an award of attorney's fees in favor of AIG.

The Court is called upon to determine the relative priorities each claimant has to the interpleaded funds. Each claimant in an interpleader action has the burden of establishing his or her own claim or right to any part of the interpleaded money, as well as his or her relative priority as to all other claimants. *See In re Bank of New England Corp.*, 359 B.R. 384, 489 (Bankr. D. Mass. 2007). Such a showing must be based on the strength of each claimant's title, not on the weakness of the adversary's claim. *Id.* Each party must make their showing by a

---

[2] ¶5 indicates that a total of $205,604 had been deposited on Ms. Bennett's behalf to the date of the filing. ¶6 indicates that, through March 1, 2010, AIG would additionally make 3 payments of $11,701, 12 payments of $12,286, and 1 payment of $12,900. Interest that has accrued on the funds in possession of the Court has not been included in this calculation.

preponderance of the evidence. *Id.*

**A. AIG's claim for fees**

AIG requests a payment of its attorney's fees in bringing this suit. No party contests the general proposition that an interpleader plaintiff may recover its reasonable attorney's fees from the common fund. *Sidwell*, 525 F.2d at 475. However, both Mr. and Ms. Bennett argue that some or all of AIG's fees should be deducted not from the common fund itself, but from particular parties' shares of that fund, on the grounds that those parties were (or, as to Mr. Bennett, that he was not) responsible for the conduct that caused AIG to incur the fees.

Neither has cited authority for the proposition that the Court can award some or all of an interpleader plaintiff's attorney's fees out of a particular party's share of the fund, rather than out of the common fund itself. A number of cases have recognized that, in appropriate circumstances, the Court can direct that the interpleader plaintiff's fees be assessed against a particular claimant, rather than the general fund, where special circumstances or the claimant's conduct so justifies. *Globe Indem. Co. v. Puget Sound Co.*, 154 F.2d 249, 250 (2d Cir. 1946); *Prudential-Bache Securities, Inc. v. Tranakos*, 593 F.Supp. 783, 785 *(D. Ga. 1984).

Here, the Court finds that special circumstances exist to relieve Mr. Bennett of a *pro rata* share of AIG's fees. The events primarily giving rise to AIG's desire to interplead the annuity were the claims asserted only against Ms. Bennett's interest by Mr. Egan and the Law Offices. The Law Offices has sometimes taken positions in this action that are difficult to follow, but it appears that it did purport to have an interest in Ms. Bennett's share (although it is not clear whether the Law Offices ever made a claim on AIG for some portion of Mr. Bennett's share). Regardless, the Court found in its December 22, 2008 Order **(# 144)**, there was an utter absence

4

of evidence to support the Law Offices' claim to Mr. Bennett's share of the annuity.

Under these circumstances, where there is no colorable argument that any other claimant ever had an interest in a particular claimant's share of the interpleaded funds, it would seem inequitable to hold the innocent claimant liable for the costs of litigation that was never meaningfully disputed as to him. Accordingly, the Court declines to award AIG any fees out of Mr. Bennett's share of the fund. The Clerk of the Court shall return the $ 38,000 withheld from Mr. Bennett's prior distribution to him. This ruling conclusively and completely resolves Mr. Bennett's interest in this action.

The remaining question is whether, as Ms. Bennett argues, AIG's attorney's fees should be attributed disproportionately to the Law Offices. The Court finds this argument without merit for several reasons. First, Ms. Bennett's request is unsupported by meaningful argument. She offers the conclusory assertion, without meaningful elaboration, that "many of the fees requested by AIG were necessitated by AIG's need to respond to lengthy pleadings . . . filed by the law Offices," and cites generically to AIG's billing invoices. It may be that Ms. Bennett could specifically point to certain filings by the Law Offices against AIG that were frivolous or which served only the Law Offices' interest rather than that of all claimants, but she has not done so here. Without greater specificity as to which particular billing entries she believes support this contention, the Court declines to search through 37 pages of AIG billing records for support for Ms. Bennett's argument. In addition, Ms. Bennett requests, without explanation, that the Court apportion 50% of AIG's fees against the Law Offices with the remainder to be borne equally between Mr. and Ms. Bennett, but offers no explanation for how those percentages were selected nor why the apportionment should follow that scheme.

Ms. Bennett does not contest the amount of fees requested by AIG. It may be that the Law Offices do, but it is difficult to ascertain the particulars from the Law Offices' briefing.[3] As best the Court can understand, the Law Offices object to certain billing entries in AIG's records where multiple attorneys were involved that do not correspond to the billing records of all counsel allegedly involved in the event, and that the Law Offices request the opportunity to obtain discovery from AIG.

The Court finds these arguments to be without merit. The fact that only one attorney billed for intraoffice communications or matters where multiple counsel participated in an event is not only not a basis to reject a fee request, it demonstrates admirable billing restraint. The few specific instances of this occurring identified by the Law Office do not cause the Court to question the accuracy or reliability of AIG's billings, in part or whole. Moreover, the Court rejects the argument by the Law Offices that it should be entitled to discovery from AIG on the attorney's fee issue. AIG has produced [4] sufficient billing records to permit the Law Offices to make an informed assessment of the amount of fees claimed, and the Law Offices have raised few specific objections to the matters shown in those records. The request for additional information indicates nothing more than the Law Offices' desire to conduct a "fishing expedition."

Accordingly, the Court grants AIG's motion in its entirety. AIG will be discharged from

---

[3] The briefing by the Law Offices is largely composed of *ad hominem* attacks and irrelevant digressions into complaints unrelated to these issues.

[4] AIG initially requested the opportunity to present its billing records *in camera* **(# 177)**, so as to shield them from "improper dissemination." The Court denied this request **(# 180)**, and AIG openly filed its billing records **(# 182)**.

this case and shall be entitled to be paid the sum of $45,590.02 from the funds on deposit with the Clerk of the Court, reflecting its reasonable attorney's fees and costs in this action. The Court will apportion the sum against Mr. Egan, the Law Offices, and Ms. Bennett equally, each paying 33% of that sum – $15,196.67.[5]

### B. Quanitification of the Law Offices' lien

The next logical step is to quantify the value of the Law Offices' attorney's lien. Pursuant to C.R.S. § 12-5-119, an attorney's lien attaches to "any judgment they may have obtained or assisted in obtaining, in whole or in part." The lien accrues when services begin and attaches to all proceeds obtained by dint of the attorney's effort. *In re Interest of J.W.*, 174 P.3d 315, 318 (Colo. App. 2007). However, by definition, the lien secures only the fees for those services that "obtained or assisted in obtaining" the judgment proceeds in question; fees incurred by the client for other services provided by the attorney are not subject to the lien.

Here, the funds against which the lien attaches are the annuity payments being made to Ms. Bennett in her capacity as an heir to the probate estate of her child, Ryan, who passed away in November 2002. The Law Offices represented Ms. Bennett in proceedings seeking to establish her status as beneficiary of Ryan's estate, but also represented her in proceedings seeking to be named personal representative of the estate, and principals of the Law Offices previously represented Ms. Bennett in proceedings seeking to establish a conservatorship of

---

[5]Because the fund is sufficiently large to pay off one or more claimants in full, it is necessary to specifically reduce each party's interest in the fund by a *pro rata* share of AIG's fees; otherwise, one or more parties would escape any obligation to pay a portion of the fees. If, for example, Mr. Egan and the Law Offices' claims were paid in their entirety by the fund, the burden of paying the fees out of the common fund would fall entirely, and improperly, on Ms. Bennett.

7

Ryan. However, only services rendered in seeking to name Ms. Bennett as a beneficiary of Ryan's estate are services that "obtained" the "judgment" giving rise to an interest in the annuity payments. Thus, the question becomes, what portion of the Law Offices' claim for services rendered is attributable solely to the beneficiary proceedings.

On this point, the Law Offices' submission is unclear. The affidavit of Theodore Coates, in support of the Law Offices' motion, attests that "the [notice of] attorney lien . . . quantifies the lien" as being in the amount of $ 671,196. It alleges that that claim involves fees "which accrued between January 1, 2003 (some for services billed for in 2003 but performed in 2002 and December 31, 2006." Beyond that, however, Mr. Coates' affidavit does not specifically assert that the claimed fees relate only to that portion of the proceedings that sought to have Ms. Bennett named as Ryan's beneficiary, and that fees for all other services have been excluded. Indeed, there is some reason to believe that unrelated fees are included in the claimed amount. The Notice of Attorney's Lien itself, attached to the Law Offices' motion, recites that the lien relates to services "to represent Kristi S. Bennett as petitioner to be a personal representative . . . and [as] probate estate beneficiary." Moreover, the Law Offices' brief seems to suggest that the sum claimed includes amounts due for work going back to the conservatorship proceeding, as it makes reference to its charging lien being "created between 1992 and 2006." *Docket* # 179 at 5. Finally, the Court refers back to its February 12, 2009 Order that, among other things, extensively noted several items of expense claimed by the Law Offices that would not be subject to an attorney's lien, either because they were services not relating to the designation of Ms. Bennett as Ryan's beneficiary, or because they were not reasonably incurred by the Law Offices. *Docket* # 166 at n. 8 (finding that, among other things, fees incurred "attempting to liquidate the

8

loan proceeds" and fees incurred in an appeal deemed by the Court of Appeals to be frivolous and sanctionable could not support the lien). The record does not indicate that the Law Offices have modified the amount claimed to be subject to the lien since that ruling. The inability of the Court to assess what portion of the Law Offices' claimed lien is attributable solely to the beneficiary proceedings is complicated by the fact that the Law Offices have not submitted any billing records, invoices, or any other material that would allow the Court to ascertain what services are being claimed to support the lien.[6]

In contrast, Ms. Bennett, in response to the Law Offices' motion, has supplied a number of billing statements from the Law Offices which, among other things, indicate that the bulk of the fees claimed by the Law Offices are indeed fees relating to precisely those items the Court indicated in its February 12, 2009 Order could not be said to relate to the lien. For example, Ms. Bennett has identified more than $270,000 in fees billed by the Law Offices that are attributable to an appeal of issues that did not relate to the beneficiary designation and which was deemed by the Court of Appeals to be frivolous.[7] Similarly, Ms. Bennett contends that more than $ 92,000

---

[6]See also the Law Offices' reply brief in support of its motion. *Docket* # 197 at 2 ("The lien filing . . . was made in relation to years of back work of the [Law Offices] <u>for two fiduciary entities (and the preservation of the assets of those two entities for whoever was ultimately determined to be properly beneficiaries)</u>." This further indicates that the Law Offices' claimed lien encompasses more than just the services provided to Ms. Bennett to have her named as a beneficiary of Ryan's estate.

[7]The Probate Court ruling appealed from rejected, among other things, Ms. Bennett's claim that she was entitled to the entire annuity payment upon Ryan's death because of her status as his conservator. Indeed, the Court of Appeals decision makes clear that nothing at issue in that appeal concerned efforts by Ms. Bennett to be named an heir of Ryan's probate estate. Thus, nothing in the appeal would be subject to a lien that attached to proceeds obtained by virtue of services provided by the Law Office that obtained a designation of Ms. Bennett as Ryan's heir.

9

of the fees claimed by the Law Offices as part of the lien involve the Law Offices' attempt to sell Ms. Bennett's interest in the annuity to possible purchasers. Again, these services did not assist in obtaining the beneficiary designation that resulted in Ms. Bennett's entitlement to the annuity proceeds at issue, and thus, these services are not subject to the Law Offices' lien. The Court has reviewed Ms. Bennett's brief in response, as well as the Law Offices' reply that offers no coherent refutation of Ms. Bennett's contention, and finds Ms. Bennett's arguments to have merit. Accordingly, the Court finds that the record establishes that the Law Offices' lien extends to no more than $ 54,919.47 of the sum on deposit with the Court.[8]

Accordingly, the Court quantifies the value of the Law Offices' lien at $ 54,919.47.

**C. Priority of Mr. Egan and the Law Offices' claims**

Having quantified the Law Offices' lien, the Court observes that it is unnecessary to reach the question of whether the Law Offices' lien has priority over Mr. Egan's lien, or vice versa. The amount on deposit with the Court is approximately $ 400,000. Of that sum, Mr. Egan holds a lien worth $ 172,303.33 (the $187,500 Mr. Egan and Ms. Bennett stipulate to, less Mr. Egan's 33% share of AIG's fees). The Law Offices hold a lien worth $ 39,722.80 (the $54,919.47 discussed above, less the Law Offices' 33% share of AIG's fees). Both of these amounts can be satisfied in full by the amount on deposit with the Court, thus fully satisfying both liens.

Not all claimants have requested interest and it is not clear from the record whether the

---

[8]The Court notes that it is not making any adjudication as to whether the fees claimed by the Law Offices in excess of this amount were actually incurred or whether they were reasonable. The Court finds only that the amount of fees charged by the Law Offices for the sole purpose of seeking to have Ms. Bennett declared a beneficiary of Ryan's estate is approximately $ 54,000.

funds in the registry of the court have borne interest. To the extent that the funds in the registry have borne interest, it shall be apportioned to match the relative shares of the funds to be disbursed.

## **CONCLUSION**

For the foregoing reasons, AIG's Motion to Discharge Plaintiff **(# 176)** is **GRANTED**. AIG is awarded its attorney's fees and costs as set forth herein. The Clerk of the Court shall, on demand of AIG, make payment to it in the amount of $ 45,590.02 from the funds on deposit in this case. In addition, upon the request of Mr. Bennett, the Clerk of the Court shall make payment in the amount of $ 38,000 to him from the funds on deposit in this case, reflecting the amount withheld under the Court's prior Order to account for AIG attorney's fees, the Court having determined that Mr. Bennett is not liable for such fees.

Mr. Egan's Motion for Summary Judgment **(# 178)** is **GRANTED**. The Clerk of the Court shall, on demand of Mr. Egan, make payment to him in the amount of $172,303.33 from the funds on deposit in this case, in full satisfaction of his lien against Ms. Bennett's assets.

The Law Offices' Motion for Summary Judgment **(# 179)** is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein. Upon the demand of the Law Offices, the Clerk of the Court shall make payment to it in the amount of $39,722.80 from the funds on deposit in this case, in full satisfaction of the attorney's lien filed by the Law Offices in the Probate Court on or about June 14, 2007.

Upon the demand of Ms. Bennett, the Clerk of the Court shall disburse to her the remaining amount on deposit in this case. The Court having concluded that no other claimant is entitled to payment of any further portion of the annuity proceeds, AIG shall resume making

payment of Ms. Bennett's interest in the annuity directly to her.

The Court having conclusively determined all remaining matters in this action, the Clerk of the Court shall close this case.

Dated this 2nd day of March, 2010

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge